## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                    Plaintiff,

    v.                                  No. 12-CR-59-MCA

RONNIE JEROME THOMAS,

                    Defendant

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**THIS MATTER** is before the Court on Defendant's Motion to Suppress Evidence with Supporting Authority [Doc. 94]. The Court has considered the written submissions of the parties, the evidence developed at the December 10, 2014 evidentiary hearing, the record in this case, and the applicable law, and is otherwise fully advised. The Motion is denied.

### I.        BACKGROUND

Sometime in the 72 hours preceding September 24, 2011, the Albuquerque Police Department (APD) used a confidential informant (CI) to conduct a controlled drug buy at the apartment building located at 444 Florida SE, Albuquerque, New Mexico. On September 24, 2011, an APD officer involved in the drug investigation submitted an affidavit in support of search warrant, and a New Mexico state judge approved the warrant. The Affidavit described Apartment 21 as the place to be searched. On September 25, 2011, APD executed the warrant. APD officers searched the target

apartment and found, in pertinent part, a firearm and ammunition.  [Docs 2 and 94-2]

The apartment was Mr. Thomas's home.   After discovering the firearm, APD learned

that Mr. Thomas had a prior felony conviction. *Transcript of Suppression Hearing*,

Testimony of Officer Fox. [TR at 63]  Mr. Thomas "admitted to Alcohol Tobacco and

Firearms Task Force Officer Matthew Pound that he was the only person living in the

apartment and that he had the firearm for self-protection."[1] [Doc. 103 at 2] On January

12, 2012, a federal grand jury indicted Mr. Thomas with the knowing possession of a

firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and

924(e)(1).  [Doc. 2]

On February 19, 2014, Mr. Thomas filed *Defendant's Motion to Suppress*

*Evidence with Supporting Authorities.* [Doc. 94]  He seeks suppression of all evidence

obtained during the execution of the search warrant, namely the firearm and ammunition.

At issue is whether the Search Warrant Affidavit provided probable cause for the search

of Apartment 21 at 444 Florida SE.  [Doc. 94; Doc. 110; Doc. 171 at 7-11]

The Affidavit states in pertinent part:

The premise to be searched is located at 444 Florida SE Apt. 21.  The
residence is a white in color, two story apartment building.  The building is
located on the east side of Florida SE.  The front door faces to the south.
The numeric of the target apartment is marked 21 and is located at the
bottom center of the front door . . .

**The facts tending to establish the foregoing grounds for issuance of a
Search Warrant are as follows**:

---

[1] Mr. Thomas's statements are the subject of *Defendant's Motion to Suppress Statements* [Doc. 93],
*Government's Response* [Doc. 103], and the Parties closing arguments.

Within the past seventy two hours, I made contact with a confidential informant from here on known as "CI" or "IT." CI advised me of several locations where narcotics were being sold on a continuous and ongoing basis, to include 444 Florida SE. CI stated IT would be willing to assist Detectives in making buys of drugs from these locations . . . Prior to approaching 444 Florida SE, CI was searched for any controlled substances, and U.S. currency, of which non were found. CI was supplied with a sum of U.S. Currency. CI was kept under constant surveillance as IT approached and entered the residence of 444 Florida SE.

After a short time CI exited 444 Florida SE and returned to a predetermined location where detectives were waiting. At no time did CI enter any other residence or meet with any other subject's prior to or after entering 444 Florida SE. I made contact with CI. CI handed me a quantity of what appeared to be a black tar like substance which based on my training and experience was consistent with Heroin. CI stated that IT was met by a male subject at 444 Florida SE. CI stated that a male handed IT the suspected Heroin in exchange for the sum of U.S. Currency which I provided IT. I searched the CI for any controlled substances and U.S. Currency which none were found. I did field-test the substance and the results did test presumptively positive for Heroin. I did tag the Heroin into A.P.D. Evidence.

*Suppression Hearing*, Government's Ex. 7 at 3-4 (emphasis original).

The Court held a hearing on Mr. Thomas's Motion on December 10, 2014. Detective Fox, Detective Vollmer, and Agent Pound testified. The parties submitted written closing arguments in March 2015. [Docs. 170 and 171]

In his motion and closing argument, Mr. Thomas argues that although the Affidavit identifies Apartment 21 as the place to be searched, there is no information in the Affidavit linking criminal activity to that particular apartment. He points to the language of the Affidavit generally identifying 444 Florida SE as the place that the CI informed law enforcement that narcotics were being continuously sold, and as the place that the CI entered. [Doc. 171 at 9-10] He contends that there is no nexus between the

criminal conduct and the place to be searched where the Affidavit recites the "CI stated that IT was met by a male subject at 444 Florida SE" and fails to indicate which apartment the male was in and whether the male was the occupant of any apartment. [Doc. 94 at 4] He argues that "[b]ased on the plain language of the affidavit, the affiant witnessed the CI entering and exiting the apartment building, not any particular apartment." [Doc. 110 at 2; Doc. 171 at 10]  This, he contends is insufficient to support the issuing judge's finding of probable cause to search Apartment 21.

Mr. Thomas also argues that the *Leon* good-faith exception to the exclusionary rule does not apply [Doc. 171 at 10-11] and that *Franks* requires suppression. [Doc. 171 at 12-25]

The Government responds that "[t]he affidavit states that the officer had constant surveillance of the CI as the CI approached and entered the residence." [Doc. 102 at 3] The Government asserts that "[b]ased on the plain language of the affidavit, the affiant witnessed the CI entering Apartment 21." [Doc. 102 at 3]  It contends that "[t]he information contained in the affidavit in this case is more than sufficient." [Doc. 170 at 6]  It bolsters this assertion with testimony from the Suppression Hearing regarding what Officer Fox and Detective Vollmer witnessed on the day of the controlled buy, stating "the statements in the affidavit in support of the search warrant are borne out by the testimony of Detectives Fox and Vollmer." [Doc. 170 at 5]

## II.    <u>ANALYSIS</u>

### A. **The Affidavit for Search Warrant failed to establish probable cause to Search Apartment 21.**

When assessing the validity of a search warrant, a reviewing court gives "great deference to the probable cause assessment of the state court judge who issued the warrant." *United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014). This Court's "review is limited to ensuring the Government's affidavit provided a substantial basis for the issuance of the warrant." *Id.* (internal quotation marks and alteration omitted). Where a case is marginal or doubtful, reviewing courts defer to the issuing judge's probable cause determination. *Id.*; *United States v. Biglow*, 562 F.3d 1272, 1282 (10th Cir. 2009).

To review probable cause, this Court "look[s] to the totality of the circumstances as detailed in the affidavit accompanying the application for the search warrant." *Pulliam,* 748 F.3d at 971 (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Probable cause is established "if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Barajas*, 710 F.3d 1102, 1108 (10th Cir. 2013); *Biglow*, 562 F.3d at 1281. "[P]robable cause is a flexible common-sense standard" and "'hypertechnical' constructions of the Government's evidence to invalidate a warrant is expressly disallowed." *Biglow*, 562 F.3d at 1282. However, a court cannot "pile hunch upon hunch" in order to find probable cause. *Barajas*, 710 F.3d at 1108. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* (citation omitted).

An affidavit that establishes probable cause to search is one that shows a connection between the place to be searched and the suspected criminal activity. *Barajas*, 710 F.3d at 1108; *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).  This is referred to as the nexus requirement, which Mr. Thomas challenges here. Whether the affidavit establishes a "sufficient nexus" between criminal activity and the place to be searched "necessarily depends on the facts of each case." *Biglow*, 562 F.3d at 1279.

"A sufficient nexus is established once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Biglow*, 562 F.3d at 1279 (internal quotation marks and citation omitted). Reviewing the four corners of the Affidavit for Search Warrant here, the Court cannot say that a sufficient nexus was established.  The Government argues that the Affidavit identifies the place to be searched with sufficient particularity, and the Court agrees. U.S. Const. Amend. IV (requiring warrants "particularly describing the place to be searched"); *Pulliam*, 748 F.3d at 972*; United States v. Dorrough,* 927 F.2d 498, 500 (10th Cir. 1991). Apartment 21 at 444 Florida SE is particularly described as the place to be searched.  However, as Mr. Thomas argues, there are no facts in Affidavit that link the CI's controlled buy at 444 Florida SE to Apartment 21.

The Government contends that "[t]he nexus is that the officer searched the CI and observed him entering Apartment 21 where Mr. Thomas was and observed the CI returning with narcotics." [Doc. 102 at 3]  The Government points to photo exhibits and the testimony of the detectives at the Suppression Hearing to support its argument that the

detectives observed the CI entering the specific apartment. [Doc. 102 at 3; Doc. 170 at 5] The photos show that rather than the apartment building having a front door, it is a building with a large gate leading to an open air courtyard with two levels of apartments whose doors face inward. [Ex. A, Doc. 102-1] Citing to the detectives' testimony, the Government explains that the affiant observed the CI entering Mr. Thomas's building, and then another detective stationed in the courtyard observed the CI exiting the stairwell and entering Mr. Thomas's apartment.[2]  [Doc. 170 at 5]

Regardless of what knowledge of the controlled buy the detectives testified to, this Court is confined in its review of probable cause to the information contained within the Affidavit for Search Warrant.  *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) ("Because a magistrate's probable cause determination must be supported by facts presented in the affidavit, we limit our review to those facts."). This is especially true in this case where Detective Fox testified that the search warrant issued was based on the affidavit submitted to the issuing judge and could not recall having any conversation with that judge or giving any testimony.  [TR at 59, lns 15-25 -- 60, lns 1-5]  What the affiant witnessed or knew at the time of the application for search warrant is not useful in this Court's review of probable cause if the information is not in, and could not be inferred from, the Affidavit.  *See Aguilar v. Texas*, 378 U.S. 108, 109 n. 1 (1964), *overruled on*

---

[2] At the hearing Detective Fox identified a photo of apartment 20 as Mr. Thomas's apartment, not apartment 21. [TR at 20]  The Court finds that more likely than not this misidentification occurred because of the passage of time.  Detective Fox was not the officer who observed the CI enter Mr. Thomas's apartment on the day of the controlled buy.  However, he was present at the execution of the warrant and thus had been to Mr. Thomas's apartment before.  The Court is not convinced his misidentification of Mr. Thomas's apartment at the suppression has any bearing on whether or not the Search Warrant Affidavit contains sufficient information to support probable cause.

*other grounds Illinois v. Gates*, 462 U.S. 213 (1983) ("It is elementary that in passing on the validity of a search warrant, the reviewing court may consider only information brought to the magistrate's attention."); *Whiteley v. Warden*, 401 U.S. 560, 565 n. 8 (1971) ("an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate."). Yet, it appears that the Government asks the Court to rely on the information provided by witnesses at the suppression hearing to determine whether the Affidavit supported probable cause. The Court declines to do so.

Although the Government asserts that the plain language of the Affidavit shows that the affiant witnessed the CI entering Apartment 21, this is not borne out in the text. The Affidavit states that the place to be searched is "444 Florida SE Apt. 21" but then states "[t]he residence is a white in color, two story apartment building. The building is located on the east side of Florida SE. The front door faces to the south. The numeric of the target apartment is marked 21 and is located on the bottom of the front door." This seems to describe a two story apartment building with a front door facing south. It also describes a second door, the door of the target apartment on which the apartment number is located. It describes the "residence" as the entire building.

In the section provided for "The facts tending to establish the forgoing grounds for issuance of a Search Warrant," the affiant states "CI was kept under constant surveillance as IT approached and entered the residence of 444 Florida SE." Here and in the section providing the description of the place to be searched the "residence" is described as 444 Florida SE. The Court agrees with Mr. Thomas that the Affidavit seems

to describe surveillance of the CI as IT entered the apartment building, not a specific apartment.

The information that Detective Vollmer testified to, that he was in the courtyard of the apartment and watched the CI enter the apartment, is not readily apparent from the Affidavit.  It is not apparent from the Affidavit that 444 Florida SE is an apartment building with a gate and a court yard from which the target apartment could be viewed.  Rather, it is described as a two story building with a front door.  It is difficult to draw any inference that an individual walking through that front door could also be seen entering a second floor apartment on the interior of the building.

Additionally, the Affidavit states that "CI stated that IT was met by a male subject at 444 Florida SE.  CI stated that a male handed IT the suspected Heroin in exchange for the sum of U.S. Currency which I provided IT."  This statement gives no indication as to whether the male who met the CI was associated with a specific apartment or where in 444 Florida SE the controlled buy occurred.  It does not describe where the male met the CI except generally at 444 Florida SE.  The Tenth Circuit has held that a sufficient nexus is established where an affidavit for search warrant identifies a residence as linked to an individual engaged in criminal activity; however that information is lacking here where APD obtained virtually no information about the suspect in the controlled buy. *See, e.g.*, *Biglow*, 562 F.3d at 1283 (holding evidence supporting reasonable conclusion that defendant was involved in the drug trade combined with agent's observation that drug dealers keep evidence related to illegal activities in their homes was sufficient to establish nexus between defendant's suspected illegal activity and his home); *United States v.*

*Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) ("When police have probable cause to believe that a suspect is involved in drug distribution, there is also probable cause to believe that additional evidence of drug-trafficking crimes . . . will be found in his residence.").

The Affidavit fails to provide a substantial basis to conclude that there was a nexus between the criminal activity at 444 Florida SE generally and Apartment 21 specifically. Although officers testified that the CI entered Apartment 21 during the controlled buy, that information was not before the magistrate to provide a basis for probable cause. *See, e.g.*, *United States v. Harris*, 215 Fed.Appx 262, 271(4th Cir. 2007) (unpublished) (holding information regarding target apartment known by law enforcement but not presented to issuing magistrate could not support probable cause to search where no other link between defendant and particular apartment was included in affidavit). "An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). There are no such facts here. From the face of the Affidavit it appears that the CI was observed while entering and exiting 444 Florida SE, not a particular apartment, and there are no facts connecting the man that the CI encountered to Apartment 21. Identifying the place to be searched with particularity is not enough if the Affidavit does not link the criminal activity to that place. *See United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) (declining to apply the good-faith exception where a warrant identified the place to be searched but failed to allege any facts linking the criminal activity with that address).

In making this ruling the Court is mindful of two things.  First, that law enforcement generally followed established protocol.  The affiant presented an affidavit to a state court judge and obtained a search warrant before searching someone's home.  Assuming that law enforcement did observe the CI entering Apartment 21, the problem here is poor drafting.  The facts set out in an affidavit must establish a nexus, and, despite the affiant's attempt, here they do not.  The poor drafting here, particularly when considered in light of the fact that law enforcement sought to search one apartment in a building of many apartments, is especially problematic, and brings the Court to the second consideration, which is that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *Biglow*, 562 F.3d at 1275 (citation omitted).  To protect against this evil, the nexus requirement protects against this evil and must be satisfied.

### B.  The Leon Good-Faith Exception Applies

Where a warrant is lacking in probable cause, the good-faith exception provides that "the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate."  *Augustine*, 724 F.3d at 1262 (quoting *United States v. Campbell*, 603 F.3d 1218, 1225 (10th Cir. 2010)).  "[T]he exclusionary rule should only be applied in those unusual cases when its purpose, to deter police misconduct, will be furthered."  *United States v. Rowland*, 145 F.3d 1194, 1208 (10th Cir. 1998).  Courts presume that an officer acting on a warrant is acting in good-faith; but, this presumption is not absolute.  *Id.*  There are four situations in which the exception does not apply.  *Augustine*, 724 F.3d

at 1262 (listing the four exceptions).  One of these is where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Mr. Thomas compares his case to *Gonzales*, where the Tenth Circuit held that this exception to the application of *Leon* applied. [Doc. 171 at 11]

Where a defendant raises this challenge, courts determine good faith "by considering whether a reasonable well trained officer would have known that the search was illegal despite the magistrate's authorization." *Gonzales*, 399 F.3d at 1230 (internal quotation marks and citation omitted). "Under this standard, when the underlying documents are 'devoid of factual support,' an officer cannot be said to have relied on them in good-faith."  *Id.*; *United States v. Henderson*, 595 F.3d 1198, 1201-02 (10th Cir. 2010) ("Reliance is entirely unreasonable only if the affidavit submitted in support of the warrant is *devoid* of factual support.")

In *Gonzales*, the Tenth Circuit adopted the "minimal nexus requirement" stating "good faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established."  *Gonzales*, 399 F.3d at 1231; *Roach*, 582 F.3d at 1204; *Augustine*, 742 F.3d at 1263.  In *Gonzales*, police conducted an inventory search of the defendant's car.  *Id.* at 1227.  They discovered a firearm and subsequently learned the defendant had a felony conviction. *Id.*  They also learned where the defendant lived. *Id.*  An officer drafted an affidavit for search warrant which contained the information about the defendant and the firearm, and particularly described the address to be searched. *Id.* 1228, 1231.  The affidavit stated that based on experience firearms are often kept at the residence.  *Id.* at 1228.  However, the officer failed to provide any facts

connecting the defendant to the place to be searched.  *Id.* at 1231.  On those facts, the court concluded that there was not factual basis connecting the place to be searched with the suspected criminal activity or with the defendant in any way.  *Id.*  The evidence was suppressed because the warrant was so lacking that reasonably well-trained officers should have been able to recognize the deficiency.  *Id.* at 1231.  This made their reliance upon it objectively unreasonable.  *Id.*

The affidavit in Mr. Thomas's case is not as stark as that in *Gonzales.  Gonzales* is not a case that involved investigation into the criminal activity conducted at the place to be searched.  Here, the Affidavit explains that the affiant was involved in a controlled buy at the apartment complex to be searched and that he had contact with the CI.  It states that the "CI was kept under surveillance as IT approached and entered the residence of 444 Florida SE" and that "[a]t no time did CI enter any other residence or meet with any other subject's prior to or after entering 444 Florida SE."  To be sure, the affiant should have indicated that the CI was under surveillance while entering and exiting the particular apartment to be searched.  Failure to do so was fatal to probable cause.  But, in reading the Affidavit, which particularly describes the target apartment, it is easy to miss that the apartment number is not included in the facts.  The use of the word "residence" can refer to an individual apartment and can be read that way in the Affidavit.  Reading the Affidavit in this way, there is an indicia of probable cause and the good-faith exception applies.

Mr. Thomas also states that for the good-faith exception to apply, an officer ordinarily must have relied on a mistake made by someone other than the officer.  [Doc.

171 at 11]  Mr. Thomas does not develop this idea and the cases that he cites to involve warrantless searches.  Here, Officer Fox made the mistake of not including the apartment number in the Affidavit.  [TR at 52, lns 19-23]  But the mistake at issue in the *Leon* context is that of the state court judge issuing the warrant without a substantial nexus. "Just as reviewing court's give 'great deference' to the decisions of judicial officers who make probable cause determinations, police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good-faith for either seeking or executing a warrant."  *Poolaw v. Marcantel*, 565 F.3d 721, 744 (10th Cir. 2009) (quoting *Corral-Corral*, 899 F.2d 927, 939 (10th Cir. 1990)).

### C. *Franks* does not require suppression.

Defendant asserts that all evidence must be suppressed pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). [Doc. 171 at 25] "Under *Franks*, a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued."  *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015). Mr. Thomas contends that "the two references to apartment 21 and all information pertaining to the alleged controlled buy must be excised because they are based on false statements and material omissions as shown" in his closing argument. [Doc. 171 at 25]

Mr. Thomas raises a number of issues regarding the testimony at the Suppression Hearing. Summarizing, he contends that (1) designating Apartment 21 as the apartment to be searched constituted reckless disregard for the truth; (2) failing to describe the amount

of heroin involved in the controlled buy was a material omission; (3) referring to the front door of 444 Florida SE as facing south shows a reckless disregard for the truth; (4) failing to accurately describe the apartment building and what Officer Fox could see from the street are material omissions; (5) not including information regarding the area of town the apartment is located in is a material omission; and (6) the lack of any description of the suspect is a material omission.  Defendant also points to portions of testimony to argue that a witness's testimony is not credible.

The Court finds that the majority of issues Defendant raises, even if considered reckless misstatements or omissions, are not material.  For instance, if the Affidavit were to have included the amount of heroin involved in the controlled buy, that would only have provided support for probable cause.  While the drafting of the Affidavit is confusing as it references two doors, describing one as facing south, the position of the door does not change the probable cause analysis here.

Defendant argues that designating Apartment 21 as the place to be searched was done with reckless disregard for the truth.  After considering the testimony at the Suppression Hearing, the Court rejects this argument.  The detectives who testified at the Suppression Hearing both participated in the surveillance of the controlled buy and in the execution of the search warrant.  At the hearing Detective Fox was asked to identify Mr. Thomas's apartment.  [TR 20, lns 16-22]  He misidentified it as apartment 20.  *Id.* However, he also testified that Apartment 21 was the apartment that the CI went into. [TR 52, lns 19-23]  Given this conflicting testimony, and the number of years between the controlled buy and the hearing, the Court is inclined to resolve this inconsistency in

favor of the detective.  Moreover, Detective Vollmer who testified to watching the CI on the interior of the building during the controlled buy was also present at the execution of the search warrant.  Despite possibly misidentifying the apartment at the suppression hearing several years later, the Court finds that any misidentification of the apartment, made at the time of hearing, can reasonably be attributed to the passage of time.

## III.   CONCLUSION

The Court will deny Defendant's Motion to Suppress Evidence.  The Affidavit failed to provide a substantial nexus between the suspected criminal activity and the place to be searched, but did provide a minimal nexus.  *Franks* does not require suppression.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence [Doc. 94] is **denied.**

**SO ORDERED** this 22nd day of June, 2015.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge